United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kobi Karp Architecture & Interior Design, Inc., Plaintiff, <br><br> v. <br><br> RG Michigan 2014 LLC and Gianfranco Rondon, Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 18-21079-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

## Order on Motion for Summary Judgment

Plaintiff Kobi Karp Architecture & Interior Design, Inc. ("Kobi Karp") brought this action against a former client, Defendants RG Michigan 2014 LLC and Gianfranco Rondon (collectively, "Rondon"),[1] alleging that the Defendants, including two defendants who have since settled, infringed certain of Kobi Karp's copyrights. (ECF No. 15.) Kobi Karp now brings this motion for summary judgment. (ECF No. 52.) The Defendants opposed the motion (ECF No. 87), and Kobi Karp filed a reply in support of the motion (ECF No. 90). Having considered the parties' briefing, the record, and the relevant legal authorities, Kobi Karp's motion is **granted in part and denied in part**. **(ECF No. 52.)**

### 1. Background

A walk down Miami Beach reveals the allure of architectural design. Geometric shapes and streamlined edges mix with pastel colors to create a pastiche of past eras. These architectural forms imbue a place with history, meaning, and creativity. It was this creativity that was granted protection in the Architectural Works Copyright Protection Act. *See* Pub L. No. 101-650, 104 Stat. 5089, 5133 (1990). The House Report went so far as to quote architect Michael Graves and advise that the act was to protect "the three-dimensional expression of the myths and rituals of society." H.R. Rep. No. 101-735, at 19 (1990).

Perhaps to evoke his own myths and rituals, Rondon retained Kobi Karp in 2014 for architectural services in connection with a proposed hotel in Miami

---

[1] Gianfranco Rondon is the principal of RG Michigan 2014, LLC. (*See* ECF No. 87-2 at ¶ 2.)

Beach.² (ECF No. 52-1 at ¶ 5; ECF No. 87-1 at ¶ 5.) Kobi Karp, a renowned architectural firm, was to create preliminary concept plans, which were to remain its property and could not be used without its written consent. (ECF No. 52-1 at ¶¶ 6–7; ECF No. 87-1 at ¶¶ 6–7; ECF No. 51-2 at 8.) Kobi Karp created architectural plans and drawings, delivered them to Rondon, and ultimately submitted them to Miami Beach, which approved the plans. (ECF No. 52-1 at ¶¶ 8, 11–12; ECF No. 87-1 at ¶¶ 8, 11–12; ECF No. 52-4.) After preparing these architectural plans and drawings, Kobi Karp registered copyrights protecting these works (the "Works"). (ECF No. 52-1 at ¶ 9; ECF No. 87-1 at ¶ 9.)

Rondon did not retain Kobi Karp as architect for long. In mid-2016, Rondon hired Castellanos Design Studio, LLC and Wesley Castellanos (collectively "Castellanos")³ as the Architect of Record for the project. (ECF No. 52-1 at ¶ 13; ECF No. 87-1 at ¶ 13; ECF No. 51-5 at 2.) However, the scope of this new retention was limited—Castellanos was to merely "revis[e]" and "reconfigure the current plans and provide a more efficient interior design." (ECF No. 52-1 at 260; ECF No. 52-2 at 14–49.) While it took Kobi Karp over one year to submit plans to the city, Castellanos submitted plans approximately three months after being retained. (ECF No. 52-1 at ¶¶ 11, 13, 16; ECF No. 81-1 at ¶¶ 11, 13, 16.) The only noticeable difference between Kobi Karp's copyrighted plans and Castellanos's plans was a new signature block. (ECF No. 52-1 at ¶ 17; ECF No. 81-1 at ¶ 17.)

Kobi Karp alleges that it was not aware of Castellanos's role in the project until November 2017, when it received a letter from Castellanos notifying Kobi Karp of a "change in architect." (ECF No. 52-1 at ¶ 23; ECF No. 52-2 at ¶ 23; ECF No. 52-5 at 2.) The letter, which was dated June 2016 and copied Rondon, informed Kobi Karp that Castellanos had been commissioned as the "successor Registered Architect" for the "elaboration of the project." (ECF No. 53-5 at 2.)

Following Rondon's retention of Castellanos, Kobi Karp argues that it has not been paid in full. In particular, Rondon has not paid Kobi Karp $38,000 in invoices for work performed. (ECF No. 52-1 at ¶ 44; ECF No. 81-1 at ¶ 44.) Moreover, Rondon has not paid Kobi Karp a $40,000 termination fee that is provided in the Agreement. (ECF No. 52-1 at ¶ 45; ECF No. 87-1 at ¶ 45.) These

---

² As part of this retention, Kobi Karp and Rondon entered into two agreements, one dated February 25, 2014 and the other June 2014. (ECF No. 52-1 at ¶¶ 6, 10; ECF No. 87-1 at ¶¶ 6, 10) (collectively, the "Agreement").

³ Upon consent, the Court entered an order of permanent injunction and final judgment as to Castellanos. (ECF No. 45.)

amounts remain outstanding. (ECF No. 52-1 at ¶¶ 44–45; ECF No. 87-1 at ¶¶ 44–45.)

## 2. Legal Standard

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *See Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## 3. Analysis

Kobi Karp filed a first amended complaint on April 27, 2018, alleging seven causes of action: direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, unfair competition under 15 U.S.C. § 1125(a), unjust enrichment, civil conspiracy, and breach of contract. (ECF No. 15.) Kobi Karp only moves for summary judgment on five of those claims, namely, his claims for copyright infringement under 17 U.S.C. § 501(a)

(on direct, contributory, and vicarious infringement theories), civil conspiracy, and breach of contract. The Court will discuss each in turn.

### A. Copyright Infringement

#### 1. *Direct Infringement*

A claim of direct copyright infringement requires that a plaintiff show (1) ownership in a valid copyright and (2) the copying of original elements of the copyrighted work. *See Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002). If a plaintiff does not provide evidence of direct copying, copying may be shown by "demonstrating that the defendants had access to the copyrighted work and that the works are substantially similar." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999).

It is undisputed that Kobi Karp owns valid copyrights in the Works. (ECF No. 52-1 at ¶ 25; ECF No. 52-2 at ¶ 25.) However, Kobi Karp's arguments that Rondon is liable for direct infringement largely mirror its arguments for contributory and vicarious infringement. Kobi Karp argues not that Rondon itself copied the Works, but that Castellanos copied the Works with Rondon's knowledge. (ECF No. 52 at 10; ECF No. 90 at 6–7.) As Kobi Karp has not presented undisputed evidence that Rondon itself copied the Works, the Court must deny summary judgment as to direct copyright infringement against Rondon. *See Herzog*, 193 F.3d at 1249 (noting that direct infringement relates to "the person who composed the [infringing] work").

#### 2. *Contributory Infringement*

It is well settled that an individual may be held liable for another's copyright infringement where the contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 437 (1984) (holding that a contributory infringer is one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission") (discussing *Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62–63 (1911)). The requisite knowledge is objective—the contributory infringer must "know, or have reason to know." *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987).

As an initial matter, contributory infringement rests on a finding that someone else actually infringed the copyright. *See DuBay v. King*, 844 F. App'x 257, 266 n.9 (11th Cir. 2021) ("[T]here 'can be no contributory infringement without a direct infringement.'") (quoting *Peter Letterese & Assocs., Inc. v. World*

*Inst. of Scientology Enter.*, 533 F.3d 1287, 1298 n.11 (11th Cir. 2008)). It is undisputed that Kobi Karp owns the copyrights at issue, and Rondon does not contest the validity of those copyrights. (ECF No. 52-1 at ¶ 25; ECF No. 52-2 at ¶ 25.) Moreover, Rondon largely does not contest that Castellanos infringed the Works. (ECF No. 87 at 5–7.) For the avoidance of doubt, the Court holds that Castellanos infringed the Works, as Castellanos had access to the Works and the plans and drawings that Castellanos prepared are nearly identical to Kobi Karp's copyrighted plans and drawings, except for the signature block. (*See* ECF No. 52-1 at ¶¶ 32, 35; ECF No. 87-1 at ¶¶ 32, 35; ECF No. 51-5 at 3–15); *see also Herzog*, 193 F.3d at 1249 (holding that copying can be shown by demonstrating "that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works"). Therefore, as there is an act of direct infringement by Castellanos, the relevant question is whether Rondon, "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct." *See Cable/Home Commc'n*, 902 F.2d at 845.

First, knowledge. Rondon presses that he had no knowledge of any infringement, as he believed that Castellanos and Kobi Karp were working together.[4] (*See* ECF No. 87 at 5; ECF No. 87-2 at ¶¶ 27–28.) However, Rondon provides no evidence to support such belief. *See Hall v. Skipper*, 808 F. App'x 958, 959 (11th Cir. 2020) ("Unsubstantiated assertions alone are not enough to withstand a motion for summary judgment.") (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)). In any event, Rondon's subjective belief is irrelevant, as the standard is objective. *See Casella*, 820 F.2d at 365 ("The standard of knowledge is objective: 'Know, or have reason to know.'") (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

Objectively, Rondon knew, or had reason to know, that Castellanos was infringing Kobi Karp's Works. After being retained as the Architect of Record,

---

[4] Rondon relies in large part on his declaration filed in support of the opposition to summary judgment. (*See* ECF No. 87-2.) Kobi Karp cries that this is a sham affidavit. (*See* ECF No. 90 at 7.) While some portions of the declaration are contradicted by the evidence, much of the declaration relates what Rondon believes he was told by others. What is more egregious is Defendants' counsels' twisting of the Rondon declaration. For example, in its response to the Plaintiff's statement of facts, Rondon asserts that Kobi Karp *in fact* knew that Castellanos was brought on to make minor changes to the Works, citing only to the Rondon declaration. (ECF No. 87-1 at ¶¶ 13–15.) However, the Rondon declaration does not support this asserted fact, as the declaration states only that Rondon thought someone told him that Kobi Karp was aware that Castellanos was brought on the project. (ECF No. 87-2 at ¶¶ 24–27.) The opposition to the statement of facts continues to make multiple factual assertions citing only to the Rondon declaration with no evidentiary support. The Court disregards any such factual assertions that are unsupported by evidence.

Castellanos told Rondon that their intent was to merely "revis[e]" and "reconfigure the current plans." (ECF No. 52-1 at 260; ECF No. 52-2 at 14–49.) Rondon authorized Castellanos to submit the "reconfigure[d]" plans to the city, and therefore Rondon had access to and authority over the new, infringing plans that Castellanos submitted. (ECF No. 52-1 at 260; ECF No. 52-1 at ¶ 30; ECF No. 52-2 at ¶ 30.) Moreover, the Agreement required that the Works could not be used "by any other design professionals in any capacity without written permission from [Kobi Karp]." (ECF No. 52-1 at ¶ 7; ECF No. 52-2 at 9.) Rondon has presented no argument or evidence that such written consent was obtained, and absent such written approval, Rondon had no objective reason to believe that Kobi Karp consented to use of its Works. Therefore, the undisputed evidence shows that Rondon knew, or had reason to know, of Castellanos's infringing acts.

Second, Rondon materially contributed to the infringing conduct. As noted above, Rondon retained Castellanos and authorized them to submit new plans to the city. (ECF No. 52-1 at ¶¶ 13, 30; ECF No. 87-1 at ¶¶ 13, 30.) The infringing plans were submitted on behalf of Rondon, and Rondon was on notice that Castellanos was merely revising the original Works. (*See* ECF No. 52-1 at ¶¶ 30, 39–40; ECF No. 87-1 at ¶¶ 30, 39–40; ECF No. 51-5 at 17–20.) Rondon took no action to prevent Castellanos from copying the original Works. (ECF No. 52-1 at ¶ 37; ECF No. 87-1 at ¶ 37.) As the owner of the project, and as the entity that retained Castellanos and paid Castellanos for revising the original Works, Rondon materially contributed to Castellanos's infringing conduct. *See Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 347 (N.D.N.Y. 2016) (holding that defendants were liable for contributory infringement where the defendants retained a competing drafting firm and the firm reproduced copyrighted works with only minor modifications).

Therefore, as Rondon had knowledge and materially contributed to a direct infringement, the Court grants summary judgment as to Rondon for contributory infringement.

### 3. *Vicarious Infringement*

Vicarious liability may lie where "[a]n individual . . . has the ability to supervise infringing activity and has a financial interest in that activity or . . . personally participates in that activity[.]" *S. Bell Tel. & Tel. Co. v. Assoc. Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985); *see also Stenograph, LLC v. Advantage Software, Inc.*, No. 99-6685-CIV, 2006 WL 8433063, at *19 (S.D. Fla. Nov. 30, 2006) (Jordan, J.). There is no knowledge requirement to establish vicarious liability; rather, liability can arise "even if [the defendants] were ignorant of the infringement." *S. Bell Tel.*, 756 F.2d at 811. Kobi Karp only

argues the first prong, namely, that Rondon had the ability to supervise and had a financial interest in Castellano's infringement.

The Court holds that the vicarious liability standard is met. Rondon retained and compensated Castellanos in connection with the infringing activity. (ECF No. 52-1 at ¶¶ 13, 30, 39; ECF No. 87-1 at ¶¶ 13, 30, 39.) Even though Rondon asserts that he relied on his construction team to interact with Castellanos, Rondon had the ability to supervise as the owner of the property and as the entity that retained Castellanos. *See Broadcast Music, Inc. v. Bloodhound Brew, LLC*, No. 6:14-cv-1705-Orl-22KRS, 2015 WL 12830484, at *3 (M.D. Fla. Nov. 2, 2015) ("The test is not whether [the defendant] actually oversees the day-to-day operations [of the infringer]," but whether the defendant "had the right and ability to manage and supervise [the infringer]."). Moreover, Rondon had a financial interest in the infringing activity, as he compensated Castellanos in connection with their limited role to revise and reconfigure the original Works. (ECF No. 52-1 at ¶¶ 39–40; ECF No. 87-1 at ¶¶ 39–40; ECF No. 52-1 at 260; ECF No. 52-2 at 14–49.) It is of no moment that the project was not ultimately profitable. When Castellanos undertook the infringing activity, Rondon had a financial interest in the project and saved money by not hiring Castellanos to create new architectural plans. *See Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1298 (M.D. Fla. 2010) (noting that a direct financial interest arises where the infringement "saved [the defendant] the cost" of purchasing a non-infringing product) (quoting *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 746 (D. Md. 2003)).

Therefore, as Rondon had a direct financial interest and the ability to supervise Castellanos's activities as its architect of record, Rondon is vicariously liable for Castellanos's infringement of the Works.

### B. Civil Conspiracy

Kobi Karp also moves for summary judgment on Count VI for civil conspiracy. Under Florida law, civil conspiracy requires that the plaintiff establish "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). Kobi Karp argues that a finding of civil conspiracy is warranted based on "the underlying allegations of direct copyright infringement and federal unfair competition[.]" (ECF No. 52 at 15.) However, Kobi Karp did not move for summary judgment

on its unfair competition claim, and absent evidence of an underlying tort, the Court cannot grant summary judgment for conspiracy on the basis of unfair competition. *See BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp.*, 292 F. App'x 784, 787 (11th Cir. 2008) (holding that civil conspiracy requires a showing of an underlying tort). Therefore, the Court will only evaluate Kobi Karp's alleged conspiracy to commit copyright infringement.

Rondon puts up a lackluster opposition, arguing that there was no overt act and that Kobi Karp cannot show damages. (ECF No. 87 at 7–8.) However, a larger issue looms—preemption. While no party briefed preemption, "a court may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (cleaned up). Whether Kobi Karp's claim for civil conspiracy is preempted by federal copyright law is a threshold issue and dispositive, and therefore the Court will review preemption *sua sponte*.[5]

The Copyright Act holds that state laws are preempted where the state law claim asserts "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Therefore, to determine whether a state law cause of action is preempted, courts look to whether the rights at issue (1) "fall within the subject matter of the copyright set forth in sections 102 and 103" and (2) "are equivalent to the exclusive rights of section 106." *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983) (cleaned up). In reviewing the second prong, courts look to whether "an extra element is required" in addition to the elements of a copyright claim, therefore removing such state law claim out of copyright preemption. *Foley v. Luster*, 249 F.3d 1281, 1285–86 (11th Cir. 2001). However, an "extra element" will only prevent preemption if that element "changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Bateman v. Mnemonics*, 79 F.3d 1532, 1549 (11th Cir. 1996) (emphasis in original) (quoting *Comput. Assocs. Int'l v. Altai*, 982 F.2d 693, 716 (2d Cir. 1992)).

Here, Kobi Karp's claim for civil conspiracy on the basis of copyright infringement is preempted by the Copyright Act. Indeed, courts have held that

---

[5] Indeed, if the court failed to review preemption and granted the Plaintiff relief for civil conspiracy, it would potentially be granting relief that is barred by federal statute. While courts may not act *sua sponte* in regard to some fact-intensive questions, *see McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1312 (11th Cir. 2021), preemption is a threshold legal question that may be addressed. *See U.S. Nat'l Bank of Or.*, 508 U.S. at 447; *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("The question of preemption is predominantly legal[.]").

"'any state-based claim for which the alleged copying is the sole factual pleading' is preempted by the Copyright Act.'" *DataTrak Bus. Sols., Inc. v. ComputerBanc, Inc.*, No. 10-60372-CIV, 2010 WL 11597692, at *7–8 (S.D. Fla. Nov. 8, 2010) (Seitz, J.) (quoting *Pena-Rivera v. Editorial Am., S.A.*, No. 96-1437-Civ, 1997 U.S. Dist. LEXIS 11795, at *5 (S.D. Fla. May 5, 1997) (holding state-law claims preempted where the claims were "nothing more than reincarnations of the copyright claim")). Here, Kobi Karp's arguments concerning the civil conspiracy center around the Defendants' "agreement to utilize [Kobi Karp's] copyright Works in connection with the 'revision' to same[.]" (ECF No. 52 at 15.) These allegations are near identical to Kobi Karp's copyright claims and amount to no more than recitations of contributory and vicarious infringement. *See Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F. Supp. 3d 1292, 1306 (S.D. Fla. 2021) (Altonaga, J.) ("Because copyright law already recognizes . . . vicarious copyright infringement concepts, which extend joint and several liability to those who participate in the copyright infringement, a civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted.") (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 588 (S.D. Tex. 2011)). Therefore, as the Works are copyrightable under the first prong of the *Crow* test, *see* 17 U.S.C. § 102(a)(8), and as civil conspiracy does not add a qualitatively different element to copyright infringement, *see DataTrak*, 2010 WL 11597692, at *8 ("[T]he agreement element of the conspiracy claim does not make that claim qualitatively different from Plaintiffs' copyright claim."), Kobi Karp cannot prevail under civil conspiracy based on its copyright infringement claim. Therefore, summary judgment is denied as to Kobi Karp's claim for civil conspiracy to the extent based on copyright infringement.

### C. Breach of Contract

Last, Kobi Karp moves for summary judgment on its claim for breach of contract. To establish a breach of contract, a plaintiff must prove (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from that breach. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). It is undisputed that an agreement existed between the parties. (ECF No. 52-1 at ¶¶ 6, 10; ECF No. 87-1 at ¶¶ 6, 10.) Moreover, there was a material breach of that agreement—Rondon failed to timely pay (1) invoices that were "due on receipt," totaling $38,000, as well as (2) a $40,000 termination fee. (ECF No. 52-1 at ¶¶ 44–45; ECF No. 15-19 at 14); *see Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (holding that failure to pay for services constitutes a material breach

where the agreement specifies the timing of payments). Rondon does not contest these totals or the applicability of the termination fee provision. (ECF No. 87 at 8–10.) Based on the above, Kobi Karp suffered damages from Rondon's breach totaling $78,000.

However, Rondon argues that summary judgment is inappropriate as Kobi Karp "failed to contradict" Rondon's affirmative defense that Kobi Karp caused damage to Rondon. (ECF No. 87 at 8–10.) Yet Rondon does not state which affirmative defense he is referencing. It appears that Rondon is referencing affirmative defense eighteen, which asserts "comparative negligence" as "[c]ertain work produced by the [P]laintiff required the Defendant to incur further fees and cost which exceed any of the amounts alleged outstanding." (ECF Nos. 24, 32.) But "comparative fault is not a defense to a breach of contract claim." *Fed. Deposit Ins. Corp. v. Kunzmann Appraisals, Inc.*, No. 12-CV-80525, 2014 WL 12531543, at *3 (S.D. Fla. Feb. 11, 2014) (Ryskamp, J.). Rather, comparative negligence may be introduced "as evidence offered on the issue of mitigation of damages." *Tampa Elec. Co. v. Stone & Webster Eng'g Corp.*, 367 F. Supp. 27, 38 (M.D. Fla. 1973); *see also Kunzmann Appraisals*, 2014 WL 12531543, at *3. Therefore, the Court will grant Kobi Karp's motion for summary judgment for breach of contract. However, the parties dispute the scope of the damages owed, and therefore summary judgment is not granted as to the scope of damages.[6]

### 4. Conclusion

In total, the Court **grants in part and denies in part** the Plaintiff's motion for summary judgment. (**ECF No. 52**.) In particular, the Court grants the Plaintiff's motion as to contributory and vicarious infringement as well as to liability for breach of contract. However, the Court denies summary judgment as to direct infringement, civil conspiracy, and damages arising from the breach of contract.

**Done and ordered** in Miami, Florida, on October 14, 2021.

_____
Robert N. Scola, Jr.
United States District Judge

---

[6] Kobi Karp argues that the negligence of which Rondon complains—an allegedly defective land survey—contractually lies with Rondon, as the Agreement states that "[Kobi Karp] is not responsible for [the] accuracy of [any] survey furnished by [Rondon]." (ECF No. 15-19 at 8.) However, it appears to be disputed whether Kobi Karp used a survey furnished by Rondon or whether Kobi Karp used a different, incorrect survey. (ECF No. 87-2 at ¶ 17.)